IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MERIDIAN SECURITY INSURANCE COMPANY,**  Plaintiff,  v.  **ROWDY ROBERTS,**  Defendant. | Case No. 3:19-CV-884-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Defendant Rowdy Roberts ("Roberts") (Doc. 26). Plaintiff Meridian Security Insurance Company ("Meridian") also filed a Cross-Motion for Summary Judgment (Doc. 28). For the reasons set forth below, Meridian's motion is denied, and Roberts's motion is granted.

## BACKGROUND

This is an action for declaratory judgment filed by Meridian to determine whether it has a duty under its insurance policy to provide underinsured motorist ("UIM") coverage benefits to Roberts (Doc. 1).[1] Meridian issued an auto liability insurance policy

---

[1] The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs. The underlying complaint prays for damages in excess of $75,000, as the UIM policy limit is $250,000 per person (Doc. 1, p. 11). Thus, it does not appear to a "legal certainty" that "the claim is really for less than the jurisdictional amount." *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006) (*quoting St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)). Plaintiff Meridian is an Indiana corporation with its principal place of business in Columbus, Ohio (Doc. 1, p. 2). Defendant Roberts is a citizen of California or Illinois (Doc. 10, p. 1).

to Roberts for the effective policy period of November 1, 2015 to November 1, 2016 (*Id.* at p. 2). The policy issued to Roberts provides UIM coverage (*Id.* at p. 3).

### A. *Underlying Action & Denial of UIM Coverage*

On December 3, 2015, Roberts was in an auto accident in California (*Id.* at p. 2). The other driver, Jorge Solis ("Solis"), rear-ended Roberts (*Id.*). Roberts retained the services of the Traut Firm ("Traut") to prosecute all claims for personal injuries sustained arising out of the December 3, 2015 accident, "and to pursue all legal rights and remedies [Roberts] might have with regard to the December 3, 2015 injuries . . . ." (Doc. 1-5, pp. 11-12). On March 28, 2016, Traut filed a complaint against Solis for $115,000.00 in the Superior Court Orange County (Doc. 1-5, p. 5).

On August 30, 2016, Roberts settled with Solis for the $15,000 bodily injury limit of his insurance (Doc. 28-1, p. 3). Then, on or around October 13, 2016, Roberts—through Traut—advised Meridian about the accident with the underinsured at-fault driver Solis and that Roberts settled the action (Doc. 1, p. 3). In the same letter, Traut demanded UIM arbitration (*Id.*).

Meridian denied Roberts UIM coverage benefits because Traut failed to promptly notify Meridian of "Roberts' settlement with Loya Casualty Insurance Company on behalf of [ ] Solis, or have an opportunity to preserve and protect Meridian's subrogation rights, which settlement occurred on or about August 30, 2016 and Meridian was first notified of a UIM claim on behalf of Roberts by letter from his counsel dated October 13, 2016" (*Id.* at p. 7).

B. *Professional Negligence Action Against Traut*

Following Meridian's denial of UIM coverage benefits, Roberts sued both Traut and Meridian in the Superior Court Orange County (Doc. 1, p. 10). On November 14, 2018, Meridian was dismissed for lack of personal jurisdiction (*Id.*; Doc. 28-1, p. 4). The action continued against Traut, however, based on allegations that Traut was professionally negligent when it failed to secure UIM coverage benefits under the Meridian policy (Doc. 28-1, p. 14). Roberts later settled his claims against Traut for $98,500 (Doc. 28-2).

C. *Declaratory Judgment Action*

On August 13, 2019, Meridian filed its Complaint for Declaratory Judgment seeking a declaration: (1) that it owes no duty or obligation to provide UIM coverage benefits to Roberts for the underlying auto accident because Roberts failed to provide timely written notice of a tentative settlement with Solis (Count I); (2) that Roberts judicially admitted that there is no UIM coverage (Count II); and (3) "in the alternative, that if it has any duties to Roberts pursuant to the policy, it is entitled to a setoff from a settlement that Roberts agreed to with [Traut]" (Count III) (Doc. 28-1, p. 2). On April 15, 2020, Roberts filed its motion for summary judgment against Meridian (Doc. 26). Meridian timely responded and filed a cross-motion for summary judgment against Roberts (Doc. 28).

LEGAL STANDARDS

Summary judgment is "the put up or shut up moment in a lawsuit" where a party lays its proverbial cards on the table, showing what evidence it possesses to convince a

trier of fact to agree with its version of the events. *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (citations omitted)). Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* No issue remains for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

In a diversity case, the Court applies state law to substantive issues. *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008). When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits. *See Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*, 712 F.3d 336, 341 (7th

Cir. 2013). Here, the parties have not raised a conflict of law issue and have instead briefed the issues on the merits under Illinois law. The Court, as a result, will apply the law of Illinois.

## ANALYSIS

**I.  Impact of Failing to Provide Timely Written Notice of Tentative Settlement (Count I)**

Meridian alleges there is no UIM coverage because "Roberts failed to provide timely written notice of a tentative settlement with the at fault driver" (Doc. 1, pp. 8-9). Roberts responds in his motion for summary judgment with an argument that Meridian bears the burden of showing it has been substantially prejudiced by the untimely notice, and Meridian cannot show that it has suffered substantial prejudice (Doc. 27, pp. 3-5). For the reasons explained below, the Court agrees with Roberts.

In Illinois, "the established rule [is] that an insurer who invokes a cooperation clause must affirmatively show that it was prejudiced by the insured's failure to notify it in advance of his settlement with the tortfeasor." *Progressive Direct Ins. Co. v. Jungkans*, 972 N.E.2d 807, 811 (Ill. App. Ct. 2012) (citing *M.F.A. Mut. Ins. Co. v. Cheek*, 363 N.E.2d 809, 813 (Ill. 1977)). An insurer "may not enforce the cooperation clause unless it proves that defendant's failure to notify it timely of the settlement substantially prejudiced it." *Id*. at 812 (citing *Cheek*, 363 N.E.2d at 813).

To meet its burden, Meridian relies on an unreported district court opinion— *Vasquez v. Meridian Sec. Ins. Co.*, 2016 WL 7230403 (S.D. Ill. Dec. 14, 2016). In *Vasquez*, the insured was injured in an auto accident on February 19, 2014. *Id*. at *4. The insured did

not file suit against the tortfeasor from the auto accident. *Id*. The insured did not notify Meridian of the settlement offer made by the tortfeasor "prior to the day [p]laintiff accepted the offer and executed the settlement agreement." *Id*. Also, the insured "did not formally advise Meridian of her intention to accept the offer and execute the general release (in exchange for $100,000) until February 4, 2016 . . . ." *Id*. On these facts, the district court found that "Meridian can rely on the unambiguous terms of the Policy to deny coverage in this case." *Id*. at *12. But the court noted the following:

> Today's adverse ruling against [plaintiff-insured] could have been avoided had her counsel exercised one of three options. First, they could have met the notice requirements. Barring that, they could have asked [the tortfeasor] to waive the statute of limitations for a sufficient time to enable [plaintiff-insured] to meet the notice requirements. **And failing all that, they could have filed suit against [the tortfeasor], which would have preserved Meridian's subrogation interest.**

*Id*. at *13 (emphasis added).

While using *Vasquez*, Meridian misstates that *Vasquez* "further supports that Roberts' breach of failing to file suit before entering the settlement further prejudiced Meridian" (Doc. 28-1, p. 9). Roberts did not fail to file suit against Solis before settling. On March 28, 2016, Roberts brought suit against Solis in the Superior Court Orange County (Doc. 1-5, p. 5). Then on August 30, 2016, Roberts settled with Solis (Doc. 28-1, p. 3). The crucial fact that Roberts filed suit against Solis before settling makes *Vasquez* easily distinguishable.

Meridian also attempts to meet its burden by conclusively arguing it was prejudiced by "Roberts' failure to timely notify it of the underlying claim, Roberts' failure to timely notify Meridian that the tortfeasor was underinsured, and Roberts' failure to

notify Meridian prior to entering into the settlement and release of the tortfeasor" (Doc. 28-1, p. 9). A judgment-proof tortfeasor, however, defeats a claim of prejudice. *Jungkans*, 972 N.E.2d at 813. Roberts notes that "the only evidence of the tortfeasor's assets is that he had an insurance policy with minimal bodily injury liability limits of $15,000.00 and was otherwise judgment-proof" (Doc. 27, p. 5). Roberts continues arguing that "the undisputed facts show that the subrogation rights that [Meridian] claims were 'destroyed' were of no value" (*Id.*). Meridian does not contest this, but simply notes that "in *Jungkans*, the insured put forth evidence that the tortfeasor was judgment proof." (Doc. 28-1, p. 9). The Court deems Meridian's failure to oppose whether the tortfeasor was judgment proof as an admission of the merits. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Pursuant to Local Rule 7.1(c), a party's "[f]ailure to timely file a response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion."

Besides failing to prove prejudice, Meridian also fails to prove that Solis and his insurer did not have any knowledge of Meridian's subrogation rights upon entering into the settlement. *See Richter v. Standard Mut. Ins. Co.*, 664 N.E.2d 1140, 1144 (Ill. App. Ct. 1996) (acknowledging that "[c]rucial to the disposition of this case is whether [the] [tortfeasor's] [insurer] or [tortfeasor] had notice of defendant's subrogation rights"). Indeed, "an unlimited release executed by an insured-subrogor for consideration not specifically including an amount designated as covering the insurer's subrogation interest does not bar a subsequent subrogation action by an insurer-subrogee against the

tortfeasor, if the tortfeasor or his insurance carrier had knowledge of the insurer-subrogee's interest prior to the release." *Home Ins. Co. v. Hertz Corp.*, 375 N.E.2d 115, 118 (Ill. 1978).[2]

Meridian also erroneously asserts that "Roberts makes a public policy argument, relying on *Progressive Direct Ins. Co. v. Jungkans* . . . ." (Doc. 28-1, p. 9). Indeed, Meridian's counsel, Robert Marc Chemers ("Chemers"), used *Jungkans* in the same manner as Roberts in *Farmers Auto. Ins. Ass'n v. Government Employees Ins. Co.*, 2014 WL 3360126 (Ill. Cir. Ct. May 29, 2014). In *Farmers Auto. Ins. Ass'n.*, Chemers represented Farmers Automobile Insurance Association ("Farmers"). Farmers issued an insurance policy with UIM coverage. *Id.* at 1. The insured was injured in an auto accident as a passenger in a friend's car. *Id.* The friend was insured by Government Employees Insurance Company ("GEICO") on a policy that also included UIM coverage. *Id.* The other driver was insured by American Family Insurance ("American Family"). *Id.* The insured sued the other driver and American Family. *Id.* American Family settled the action, but GEICO was not notified of the settlement with American Family until months later. *Id.* Following settlement with American Family, the underlying action was dismissed with prejudice. *Id.* Farmers then "filed a Complaint for Declaratory Judgment, seeking a declaration that Farmers' UIM benefits apply only in excess to the coverage benefits of GEICO's UIM coverage available to [the daughter's friend] in effect on the day of the accident." *Id.*

---

[2] Notably, counsel for Meridian made this same argument in *Farmers Auto. Ins. Ass'n v. Government Employees Ins. Co.*, 2014 WL 3360126, (Ill. Cir. Ct. May 29, 2014). In this action, however, Chemers fails to address two Illinois Supreme Court cases, *Hertz Corp.*, 375 N.E.2d 115, and *Cheek*, 363 N.E.2d 809.

Contrary to Chemers's assertion in this action, in *Farmers Auto. Ins. Ass'n.*, Chemers cited *Jungkans* and argued that "GEICO has not been prejudiced because the tortfeasor [ ] was judgment-proof . . . ." *Id.* at 7. The circuit court agreed and held that "[a]lthough GEICO's subrogation rights were violated because it was not informed of the settlement between [the] [insured's] [daughter] and American Family, GEICO failed to prove that it was substantially prejudiced by the [insured's] failure to notify GEICO in advance of the settlement." *Id.* at 8.

Meridian, like GEICO in *Farmers Auto. Ins. Ass'n*,[3] fails to prove that it was substantially prejudiced by Roberts's failure to notify it in advance of settlement. Accordingly, Roberts is entitled to judgment as a matter of law as to Count I.

**II.    Impact of "Judicial Admissions" from the Professional Negligence Action Against Traut (Count II)**

In Count II, Meridian seeks a declaration that it owes no duty or obligation to provide UIM coverage benefits because Roberts judicially admitted that there is no UIM coverage in the professional negligence action against Traut (Doc. 1, Doc. 28-1, p. 2). The Court disagrees.

*People ex rel. Dep't of Pub. Health v. Wiley*, 843 N.E.2d 259 (Ill. 2006), controls the Court's analysis with respect to Count II. In *Wiley*, the Illinois Department of Public Health ("Department") filed suit against a doctor alleging that the doctor violated scholarship contracts she entered into with the Department in Count I. *Id.* at 261. The

---

[3] *Farmers Auto. Ins. Ass'n*, 2014 WL 3360126, is not binding on the Court, but is certainly helpful when assessing the *quality* of Meridian's argument.

circuit court granted the Department summary judgment as to Count I. *Id*. at 266. On appeal, the doctor argued that the Department is not entitled to summary judgment on Count I because the "Department settled any and all claims that it had against [the] [doctor] under the scholarship contracts when it entered into the installment agreement with [the] [doctor] in September of 1993." *Id*. at 267. The doctor also argued that the Department is "precluded from arguing that the installment agreement was not a settlement, based on a statement made by the Department in its verified complaint that [the] [doctor] and the Department 'entered into an 'Installment Agreement' . . . for the purpose of settling claims in accordance with the Illinois Family Practice Residency Act.'" *Id*. at 268. "According to [the] [doctor], this statement shows the Department's intent to enter into a settlement with [the] [doctor] and is a binding judicial admission that the installment agreement was in the nature of a settlement contract." *Id*.

The Illinois Supreme Court denied the doctor's argument noting that "the Department's statement in its verified complaint was not a judicial admission that the installment agreement was a settlement agreement between the parties." *Id*. at 269. The Court continued acknowledging that "a party is not bound by admissions regarding conclusions of law since it is for the courts to determine the legal effect of the facts adduced." *Id*. at 269.

Although the Court in *Wiley* did not analyze whether the allegations from a separate action acts as a judicial admission that an insured is not entitled to UIM coverage, the critical issue in *Wiley* is the same here. In *Wiley*, the Court acknowledged

that "[w]hether the installment agreement was, in fact, a settlement agreement presents a question concerning the proper interpretation of a contract." *Id.* at 268. The Court continued finding that "[t]he construction of a contract is a question of law." *Id.* (citations omitted). Similarly, "[i]t is of course well established that the construction of an insurance policy's provisions is a question of law." *Pritza v. Vill. of Lansing*, 940 N.E.2d 1164, 1174 (Ill. App. Ct. 2010) (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (1992)). Like the Department in *Wiley*, who "[was] not bound by admissions regarding conclusions of law since it is for the courts to determine the legal effect of the facts adduced[,]" *id.* at 269, Roberts is not bound by his allegations in the professional negligence action because the construction of an insurance policy's provisions is a question of law. Accordingly, Roberts is entitled to judgment as a matter of law as to Count II.

### III. Claim Splitting

Next, Meridian argues that Roberts's UIM coverage claims should be dismissed under the rule against claim splitting (Doc. 28-1, pp. 12-14). The Court, however, is hesitant to apply the rule against claim splitting when the parties are not identical or in privity. *See Carlson v. Rehab. Inst. of Chicago*, 50 N.E.3d 1250, 1258 (Ill. App. Ct. 2016) (noting that "[t]his rule against claim-splitting flows from the principle that litigation should have an end and no person should be unnecessarily harassed with a multiplicity of lawsuits").

The facts in *Carlson*, which Meridian cites in support of its motion for summary judgment, only reinforces the Court's hesitation to apply the rule against claim splitting

when the parties are not identical or in privity. In *Carlson*, the plaintiff sued a transport company for negligence. *Id*. at 1254. The plaintiff later amended his complaint to add the parent company under a breach of contract theory, but ultimately dismissed the parent company under section 2-1009 of the Illinois Code of Civil Procedure. *Id*. at 1254–55. After a jury found the transport company negligent in the first action, the plaintiff brought a second action against the parent company and another party again under a breach of contract theory. *Id*. at 1255. On appeal, the court laid out the three requirements of the doctrine res judicata: "(1) identity of parties or their privies in the lawsuits; (2) identity of causes of action; and (3) final judgment on the merits rendered by a court of competent jurisdiction." *Id*. at 1257 (citations omitted). The court found the first requirement was met because the transport company was a wholly owned subsidiary of the parent company. *Id*. at 1258. The court then ultimately found "[t]he three elements of res judicata are present, and [plaintiff] had a fair and reasonable opportunity to have fully litigated his claim in the original lawsuit." *Id*. at 1259.

Unlike the transport company and parent company in *Carlson*, Meridian and Traut are not in privity. Also, unlike the plaintiff in *Carlson*, Roberts did not voluntarily dismiss Meridian from the professional negligence action to only refile this action against Meridian. Meridian was dismissed from the action for lack of personal jurisdiction (Doc. 28-1, p. 13).

Meridian also cites *Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199 (Ill. 1996), but it is unhelpful as it "stands for the proposition that a plaintiff who splits his claims by

voluntarily dismissing and refiling part of an action after a final judgment has been entered on another part of the case subjects himself to a res judicata defense." *Hudson v. City of Chicago*, 889 N.E.2d 210, 217 (Ill. 2008). Accordingly, Meridian's argument as to claim splitting is rejected.

IV.     **Setoff of the Traut Settlement From UIM Coverage Benefits (Count III)**

Meridian seeks a declaration that if there is UIM coverage, then it is entitled to a setoff for Roberts's settlement with Traut (Doc. 1, p. 13). In Meridian's cross-motion for summary judgment, it focuses first on the fact that "Roberts is only entitled to one recovery for his injury" (Doc. 28-1, p. 14). To support this argument, Meridian notes that "Roberts' recovery through the settlement with [Traut] was for [Traut's] failure to secure UIM benefits through the Meridian policy" (*Id.*). Meridian continues explaining:

> If, as Roberts claims, he is still entitled to UIM coverage from Meridian, then any recovery received for his damages would be duplicative of the recovery he received from [Traut]. Roberts is not entitled to recover twice for the same injury. **Public policy dictates that Roberts should, at most, recover the difference between what the tortfeasor's insurer paid plus the legal malpractice settlement up to the limits of liability of his Meridian policy**. **Any other result would result in a double recovery to Roberts for his injury, which is against established Illinois public policy.**

(*Id.* at p. 15) (emphasis added).

Meridian's argument regarding double recovery puts the horse before the cart. Illinois courts frequently determine an insurer's liability to its insured "before the factual question of damages is resolved." *See Illinois Emcasco Ins. Co. v. Tufano*, 63 N.E.3d 985, 997 (Ill. App. Ct. 2016) (noting that "[i]t is not uncommon in cases like this for the liability question to be determined by the trial court on a dispositive motion at trial, before the

factual question of damages is resolved"). In *Hoglund v. State Farm Mut. Auto. Ins. Co.*, 592 N.E.2d 1031 (Ill. 1992), the damages for one plaintiff had not been determined. After the Illinois Supreme Court determined the insurer's liability, the Court affirmed the appellate court's decision to remand to the circuit court for a determination on whether one of the plaintiff's damages exceeded what the tortfeasors already paid. *Id.* at 1035. Admittedly, *Hoglund* is distinguishable on multiple fronts, but *Hoglund* controls the Court's decision to first determine Meridian's liability. One difference is the underlying accident included multiple tortfeasors—here there is only one. Another difference is the insurer argued that it was entitled to a setoff from the tortfeasor's insurer, and thus the insurer owed nothing in underinsured motorist coverage. Here, Meridian is arguing that it is entitled to a setoff from a source other than auto liability policies.

Meridian fails to provide any authority supporting the notion that a court must first consider double recovery. While "several Illinois Appellate Court cases have found that *Hoglund* does not apply in situations involving a single tortfeasor[,]" *Zdeb v. Allstate Ins. Co.*, 935 N.E.2d 706, 712 (Ill. App. Ct. 2010), the insureds were using *Hoglund* in support of their arguments for coverage. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Coe*, 855 N.E.2d 173 (Ill. App. Ct. 2006); *Banes v. W. States Ins. Co.*, 616 N.E.2d 1021 (Ill. App. Ct. 1993); *Darwish v. Nationwide Mut. Ins. Co.*, 617 N.E.2d 72, 75 (Ill. App. Ct. 1993); *Marroquin v. Auto-Owners Ins. Co.*, 614 N.E.2d 528 (Ill. App. Ct. 1993). These cases do not support the notion that a court must first consider double recovery. In fact, at least one case, *Banes*, 616 N.E.2d 1021, acknowledged that "[t]he concern for double recovery arises only in the

context of *more than one tort-feasor*, as the amount paid by one tort-feasor acts to reduce the recoverable damages from the remaining tort-feasors." *Id.* at 1024 (emphasis added) (citations omitted).

Meridian also argues that "[p]ublic policy dictates that Roberts should, at most, recover the difference between what the tortfeasor's insurer paid plus the legal malpractice settlement up to the limits of liability of his Meridian policy[,]" (Doc. 28-1, p. 15). This argument is a loser because Meridian ignores the Illinois Insurance Code,[4] Illinois jurisprudence, and public policy.

Under the Illinois Insurance Code, "the limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, *less those amounts* actually recovered under the applicable bodily injury insurance policies, bonds or other security *maintained on the underinsured motor vehicle*." 215 Ill. Comp. Stat. Ann. 5/143a-2 (emphasis added).[5] "[Illinois] law is clear that an insurer is liable for underinsured motorist coverage <u>only</u> for the difference between the amount recovered from the *tortious driver* and the stated limit for underinsured motorist coverage." *Banes*, 616 N.E.2d at 1026 (emphasis added) (citations omitted).

Illinois courts have construed the phrase "maintained on the underinsured motor

---

[4] In *Vasquez*, 2016 WL 7230403, a case that "a Judge of this Court considered the same issue with virtually the same operative facts" (Doc. 28-1, p. 8), Meridian cited to the Illinois Insurance Code and argued that insureds have a duty under the Code to provide notice of an insured's intent to settle. Here, however, Chemers failed to mention the Code. From the Court's perspective, this strategy was based on the fact that the Code significantly undercuts Meridian's argument as to Count III.

[5] "When an insurance policy is issued, applicable statutory provisions in effect at the time are treated as part of the policy." *Chester v. State Farm Mutual Automobile Insurance Co.*, 591 N.E.2d 488, 493 (Ill. App. Ct. 1992).

vehicle" from the Illinois Insurance Code to preclude a reduction for recovery from sources other than auto liability policies. In *Farmers Auto. Ins. Ass'n v. Coulson*, 931 N.E.2d 1257 (Ill. App. Ct. 2010), the insured was severely injured when an underinsured motorist drove through a window at a restaurant. *Id*. at 1258. The insured alleged over $900,000 in damages. *Id*. The motorist's insurer was State Farm, and the policy included bodily injury liability limits of $50,000. *Id*. The insured settled with State Farm for $24,000 and the property owner and franchisee for $410,000. *Id*. Also, the insured's auto liability policy with Farmers included UIM coverage in the amount of $300,000 per person and $500,000 per occurrence. *Id*.

After making a demand for UIM benefits, Farmers declined to pay UIM coverage benefits asserting that the policy contained setoff provisions which allowed Farmers to set off the settlement amounts the insured received from State Farm, the property owner, and the franchisee. The Appellate Court for the Fifth District of Illinois disagreed and held that "under section 143a–2(4), in effect when the policy was issued and therefore a part of the policy, the only amounts deductible from the UIM coverage are those amounts paid on behalf of the underinsured motor vehicle." *Id*. at 1263. The Court also acknowledged that "[t]he property owner and the franchisee were not UIMs, and it is irrelevant to the amount Farmers could deduct from its UIM liability limit, so long as there is no double recovery by [the] [insured]." *Id*. at 1262.

Additionally, the Appellate Court for the Fifth District of Illinois in *Coulson* analyzed the public policy of placing insureds in the same position as if the UIM had been

fully insured, noting the following:

> If we allowed Farmers to deduct the amounts paid to [the] [insured] by the property owner and the franchisee of the [ ] restaurant, this would frustrate the public policy of placing [the] [insured] in the same position as if [the tortfeasor], the UIM, had been fully insured. *See Sulser v. Country Mutual Insurance Co.,* 147 Ill.2d 548, 555, 169 Ill.Dec. 254, 591 N.E.2d 427 (1992) (recognizing that the purpose behind UIM coverage is the same as for uninsured-motorist coverage—"to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance"). This is true because the liability of the property owner and the franchisee is totally independent from the UIM's liability. Moreover, even if [tortfeasor] had been fully insured, [the] [insured] could have still recovered against the property owner and the franchisee for her damages (provided there was no double recovery).

*Id.*

At least one recent decision further supports the public policy of placing insureds in the same position as if at fault motorist had been fully insured. In *DeStefano v. Farmers Auto. Ins. Ass'n*, 55 N.E.3d 677 (Ill. App. Ct. 2015), the insured was hit by a United States postal worker. *Id.* at 678. The postal worker had a single limit policy of $25,000 with Progressive Insurance Company ("Progressive"). *Id.* Progressive paid its policy limit and the United States paid $49,900 "in exchange for a release of [the] [insured's] claims against the United States and its agents and employees." *Id.* Also, the insured was covered under an auto liability policy with Farmers which included UIM coverage in the amount of $100,000. *Id.* After making a demand for UIM benefits, Farmers asserted it was entitled to a setoff from both the $25,000 paid by Progressive and the $49,900 paid by the United States. *Id.* On appeal, the only issue raised was "whether the trial court erred in entering judgment in favor of [the] [insured] in the amount of $75,000." *Id.*

"According to Farmers, both the $25,000 paid by Progressive and the $49,900 paid by the United States were paid on behalf of the underinsured motorist, [the postal worker], which allows Farmers to deduct those amounts from its UIM limit." *Id.* at 679. Not only did the Court in *DeStefano* find that *Coulson,* 931 N.E.2d 1257, supports the insured's position, but also the Court noted that "[i]f we allowed Farmers to deduct the amount paid by the United States to [the] [insured], we would frustrate the public policy behind UIM coverage, which is to place the insured in substantially the same position he would have occupied if the tortfeasor carried adequate insurance." *Id.* at 680 (citations omitted).

Meridian also cites *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639 (Ill. 2011). Meridian asserts the Court in *Rosen* found that "the settlement is a setoff is consistent with the purpose behind uninsured/underinsured motorist coverage protection" (Doc. 28-1, p. 15). The Court disagrees with Meridian's reading of *Rosen*. In *Rosen*, the insured was awarded an amount in arbitration "subject to reduction by all applicable set-offs in favor of Travelers Insurance Company,[ ] including but not limited to medical payments made by Travelers Insurance Company." *Id.* at 643. The insurance company then filed a complaint in circuit court contesting the arbitration award and demanding a jury trial, under the "trial *de novo* " provision of the arbitration agreement. *Id*. The insured answered and asserted that the trial *de novo* provision was " invalid and unenforceable as against the public policy of the State of Illinois." *Id*. Also, the insured filed a counterclaim requesting the enforcement of the arbitration award. *Id*.

In *Rosen*, the Illinois Supreme Court was asked "whether a provision allowing either party to an insurance contract to demand a trial *de novo* following arbitration is unenforceable when it appears in an underinsured-motorist policy." *Id*. at 642. The Court fails to see how *Rosen* supports Meridian's argument. At best, the Illinois Supreme Court acknowledged that "[i]f the tortfeasor is insured, but for an amount less than the claimant has bargained for and paid for with his own insurer, mandatory underinsured-motorist coverage in an amount equal to his uninsured-motorist coverage ensures that the claimant will still be compensated up to the limits of his own uninsured-motorist policy." *Id*. at 652–53. But this appears to help Roberts—not Meridian.

Here, Traut was not an underinsured motorist. Because section 143a-2(4) limits the amounts deductible from UIM coverage to the amount paid on behalf of the underinsured motor vehicle, the Traut settlement is not deductible. This reading of the Illinois Insurance Code is not only consistent with *Coulson*, 931 N.E.2d 1257, and *DeStefano*, 55 N.E.3d 677, but also consistent with "the public policy behind UIM coverage, which is to place the insured in substantially the same position he would have occupied if the tortfeasor carried adequate insurance." *DeStefano*, 55 N.E.3d at 680. Accordingly, Roberts is entitled to judgment as a matter of law as to Count III.

## Conclusion

For these reasons, the Cross-Motion for Summary Judgment (Doc. 28) filed by Plaintiff Meridian Security Insurance Company is **DENIED**. Defendant Rowdy Roberts's Motion for Summary Judgment (Doc. 26) is **GRANTED** as to the question of Meridian's liability. The Court will by separate order set this matter for a telephonic status conference

for the purpose of setting deadlines for briefing on whether Meridian can be compelled to arbitration in this matter or whether a hearing to determine the overall extent of damages suffered by Roberts in the auto accident is necessary. An award for damages in favor of Roberts and against Meridian is permissible only to the extent Roberts does not double recover. Meridian's liability is capped at the UIM policy limit, less the amounts already paid by Solis's insurance.

**IT IS SO ORDERED.**

DATED:  March 12, 2021

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**